UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | CV 15-01350-AB (PLAx) | Date: | April 28, 2015 |

Title:  Steven Sanchez v. Russell Sigler, Inc.

Present: The Honorable   ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:     [In Chambers] Order Denying Plaintiff's Motion to Remand (Dkt. No. 15)**

On January 20, 2015, Plaintiff Steven Sanchez filed a complaint ("Compl.," Dkt. No. 1-1) in Los Angeles Superior Court against his former employer, Defendant Russell Sigler, Inc.  On February 25, 2015, Defendant filed a Notice of Removal with this Court, claiming that the Class Action Fairness Act ("CAFA"),  28 U.S.C.§§ 1332(d) and 1446, vests this Court with original jurisdiction.  (Dkt. No. 1.)

Pending before the Court is Plaintiff's Motion to Remand, filed March 27, 2015 ("Mot.," Dkt. No. 15).  Defendant filed an opposition ("Opp'n," Dkt. No. 16), and Plaintiff filed a reply ("Reply," Dkt. No. 17).  On April 24, 2014, the Court took Plaintiff's Motion to Remand under submission.  (Dkt. No. 20).  Having considered the materials submitted by the parties, and for the reasons indicated below, the Court **DENIES** Plaintiff's Motion to Remand.

**I.    Facts and Procedural Background**

Defendant employed Plaintiff as an hourly, non-exempt employee in California from October, 2007 until February, 2011. (Compl. ¶ 18.) On January 20, 2015, Plaintiff filed a class action complaint against Defendant. (*See* Compl.) The class action's single cause of action alleges that Defendant violated California Business and Professions Code ("UCL") §§ 17200, *et seq*. Plaintiff also seeks attorneys' fees under California Code of Civil Procedure § 1021.5, which allows for the award of attorneys' fees to prevailing parties in an actions that benefit the public interest. (Compl. ¶ 46.)

   **A.    Proposed Class**

Plaintiff defines the proposed class as "[a]ll current and former hourly-paid or non-exempt individuals employed by any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Compl. ¶ 13.)

   **B.    Alleged Conduct**

Plaintiff bases his UCL claim on various California Labor Code provisions. He alleges Defendant violated California labor laws by:

- "[a]t all material times . . .," failing to pay Plaintiff and putative class members overtime wages "for all hours worked" in violation of California Labor Code §§ 510 and 1198; (Compl. ¶¶ 36, 49)

- "[a]t all material times . . .," failing to provide Plaintiff and putative class members with "uninterrupted meal and rest periods" in violation of California Labor Code §§ 226.7 and 512(a); (Compl. ¶¶ 37, 50)

- "[a]t all material times . . .," failing to pay Plaintiff and putative class members "at least minimum wages for all hours worked" in violation of California Labor Code §§ 1194, 1197 and 1197.1; (Compl. ¶¶ 38, 52)

- "[a]t all material times . . .," failing to pay Plaintiff and putative class members "all wages owed to them upon discharge or resignation" in violation of California Labor Code §§ 201 and 202; (Compl. ¶¶ 39, 53)

- "[a]t all material times . . .," failing to pay Plaintiff and putative class members wages in a timely manner in violation of California Labor Code § 204; (Compl. ¶¶ 40, 54)

- "[a]t all material times . . .," failing to provide Plaintiff and putative class

members "complete or accurate wage statements" in violation of California Labor Code § 226(a); (Compl. ¶¶ 41, 55)

- "[a]t all material times . . .," failing "to keep complete or accurate payroll records" for Plaintiff and putative class members in violation of California Labor Code § 1174(d); (Compl. ¶¶ 42, 56)

- "[a]t all material times . . .," failing to properly compensate Plaintiff and putative class members in order to increase its profits. (Compl. ¶ 43.)

### C. Removal

Plaintiff filed his complaint on January 20, 2015. (*See* Compl.) Defendant timely filed a Notice of Removal to this Court on February 25, 2015, claiming that the case meets CAFA's jurisdictional requirements. (Dkt. No. 1 at pp. 1-2.) On March 27, 2015, Plaintiff filed a Motion to Remand. (*See* Mot.) On April 6, 2015, Defendant filed an opposition to Plaintiff's Motion to Remand. (*See* Opp'n.) On April 13, 2015, Plaintiff filed a reply. (*See* Reply.)

## II. Legal Standard

CAFA allows federal courts to exercise jurisdiction over state law class actions when (1) the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," and (3) the plaintiff's putative classes include at least 100 total members. 28 U.S.C. § 1332(d). As in all removal cases, "the burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

## III. Discussion

The parties do not dispute that Plaintiff's class is larger than 100 and that the parties are minimally diverse as required by § 1332(d)(2). Accordingly, the only issue presented is whether Defendant has demonstrated that the amount in controversy exceeds $5,000,000.

### A. Amount in Controversy Legal Standard

When damages are unstated in a plaintiff's complaint, a defendant seeking removal has the burden of establishing that the aggregate amount in controversy from the plaintiff's claims exceeds $5,000,000. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). A removing defendant must make this showing by the preponderance of the evidence. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir.

2013). The preponderance of the evidence standard is not "daunting." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008). "[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Id*. at 1205 (internal quotations omitted). Instead, a removing defendant must provide summary-judgment-type evidence indicating that the aggregate amount in controversy exceeds $5,000,000. *Ibarra*, 775 F.3d at 1197. This evidence cannot be speculative or conjectural. *Id*. Even so, the plaintiff is the "master of her complaint," and the Court assumes that a jury will return a judgment in favor of the plaintiff on all claims. *See Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) (internal quotations omitted); *Korn*, 536 F. Supp. 2d at 1205.

    **B.**    **Defendant Adequately Establishes that the Amount in Controversy Exceeds $5,000,000**

Defendant has offered sufficient evidence to establish, by the preponderance of the evidence, that the amount in controversy stemming from Plaintiff's sole cause of action exceeds $5,000,000.

Defendant offers the declaration of its Director of Human Resources, Kimberly Jackson. ("Jackson Decl.," Dkt. No. 16-1.) She declares that, from January 20, 2011, four years before Plaintiff filed his complaint, to February 25, 2015, the date Defendant filed its Notice of Removal ("the relevant time period"), Defendant "employed 238 hourly-paid, non-exempt employees in California." (Jackson Decl. ¶ 5.) During the relevant time period, those 238 employees worked a total of 28,158 weeks. (*Id*.) The average hourly wage for the 238 hourly employees was $19.22. (*Id*.) Based on Jackson's declaration and Plaintiff's complaint, Defendant makes the following calculations to discern the amount in controversy:

- <u>Meal and Rest Period Violations</u>: Plaintiff alleges that "at all material times," Defendant failed to provide putative class members with uninterrupted meal and rest periods as required by California law. (Compl. ¶ 37.) In asserting an amount in controversy, Defendant assumes each putative class member was deprived of one meal period and one rest period five days per week, every week during the relevant time period. (Opp'n at p. 13.) Under California law, an employee who suffers a meal or rest period violation is entitled to one hour of pay at the employee's regular rate of compensation. Cal. Labor Code § 226.7. To arrive at the amount in controversy for the alleged meal period violations, Defendant multiplies 28,158 (the total number of weeks worked during relevant time period) by 5 (the number of work days per week) and $19.22 (the putative class's average wage), resulting in a product of $2,705,983.80. (Opp'n at p. 14 n.1.) Because the penalties for

meal and rest period violations are the same, Defendant repeats the same calculation for the alleged rest period violations, resulting in a product of $2,705,983.80. (Opp'n at p. 15 n.2.) Added together, Defendant's asserted amount in controversy for the alleged meal and rest period violations amounts to $5,411,967.60.

- Overtime Violations: Plaintiff alleges that Defendant failed to pay overtime wages as required by California law. (Compl. ¶ 36.) In determining the amount in controversy arising from Plaintiff's overtime allegation, Defendant assumes each putative class member was deprived of two hours of overtime compensation each week. (Opp'n at p. 17.) Thus, Defendant multiplies 28,158 (the total number of weeks worked during relevant time period) by 2 (the number of overtime hours not compensated per week) and $28.83 (the putative class's average wage multiplied by 1.5, California's overtime rate), resulting in a product of $1,623,590.28. (Opp'n at p. 17 n.3.)

- Minimum Wage Violations: Plaintiff alleges that Defendant failed to pay putative class members "at least minimum wages for all hours worked." (Compl. ¶ 38.) In asserting an amount in controversy, Defendant assumes each putative class member was deprived of one hour of minimum wage per week. (Opp'n at p. 18 n.10.) As Defendant notes in its opposition, California's minimum wage was $8 per hour from January 20, 2011 to July 1, 2014. (*Id.*) The putative class worked a total of 23,632 weeks during that period. (*Id.*) Defendant therefore multiplies 23,632 (the total number of weeks worked by the putative class between January 20, 2011 and July 1, 2014) by $8 (the minimum wage during that period) and 1 (the number of hours not compensated each week) to arrive at a product of $189,056 for that period. (*Id.*) Between July 1, 2014 and February 25, 2015, California's minimum wage was $9 per hour. (*Id.*) During that period, the putative class worked 4,526 total weeks. (*Id.*) Defendant thus multiplies 4,526 (the total number of weeks worked by the putative class between July 1, 2014 and February 25, 2015) by $9 (the minimum wage during that period) and 1 (the number of hours not compensated each week) to obtain a product of $40,724 for that period. (*Id.*) Adding $189,056 to $40,724, Defendant calculates $229,790 in controversy from Plaintiff's minimum wage allegations. (*Id.*)

- Attorneys' Fees: Plaintiff claims he will be entitled to attorneys' fees if his class action succeeds. (Compl. ¶ 46.) Defendant contends that the Court can assume attorneys' fees will amount to 25% of the total amount in controversy. (Opp'n at p. 21.) Not including attorneys' fees, Defendant asserts a total amount in controversy of $7,265,347.88. One quarter of that

sum amounts to $1,816,336.97 in attorneys' fees.

In sum, Defendant asserts that Plaintiff's complaint places $9,081,684.85 in controversy.[1] (Opp'n at p. 24.) While Defendant's calculations likely overstate the amount in controversy, Defendant still establishes by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

### 1. Evidentiary Objections

Plaintiff objects to the evidence in Jackson's declaration. (Mot. at p. 4.) Plaintiff claims Jackson lacks personal knowledge, fails to establish a foundation for the evidence she offers, and improperly uses an average wage. (Mot. at pp. 4, 5; Reply at p. 12.) The Court disagrees and overrules Plaintiff's objections to Jackson's declaration.

First, Jackson's declaration establishes that she has personal knowledge of the employment data provided in the declaration. Courts may infer personal knowledge from declarations about the very subject of the declarant's job. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (inferring personal knowledge of corporate activities from the declarants' positions as corporate chairmen); *Cagle v. C & S Wholesale Grocers, Inc.*, No. 2:13-CV-02134-MCE, 2014 WL 651923, at *8 (E.D. Cal. Feb. 19, 2014) (finding the declaration of a "Regional Director of Field Human Resources" admissible in assessing the amount in controversy in an employment case). Jackson serves as Defendant's Director of Human Resources. (Jackson Decl. ¶ 1.) She regularly reviews Defendant's "personnel files, employment history, and payroll history." (Jackson Decl. ¶ 2.) The Court infers from Jackson's declaration that she has personal knowledge of Defendant's employment information.

Second, Jackson lays an adequate foundation for the employment information she provides. In making her declaration, Jackson relied on admissible data in the form of business records. "[H]uman resources and payroll databases . . . are textbook examples of records of regularly conducted activity within the hearsay exception of Rule 803(6)." *Fredrickson v. Starbucks Corp.*, 980 F. Supp. 2d 1227, 1231 (D. Or. 2013), *appeal docketed*, No. 13-36067 (9th Cir. Nov. 13, 2013). At this stage of the litigation, Defendant need not produce the actual business records upon which Jackson bases her declaration. *Cagle*, 2014 WL 651923, at *8. Instead, "[w]here, as here, a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM JCX, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Jackson's personal knowledge of Defendant's employment history, review of business records, and declaration under oath establish a proper foundation for the employment information she

---

[1] Defendant does not include the potential amount in controversy from any of the Plaintiff's remaining allegations in its calculations.

provides.

Third, Defendant's use of an average hourly wage was proper for determining the amount in controversy. "[T]he average wage of the class members is an appropriate rubric for assessing wages as well as penalties based on wage-and-hour violations." *Leos v. Fed. Exp. Corp.*, No. 2:14-CV-02864-ODW, 2014 WL 2586866, at *5 (C.D. Cal. June 10, 2014). Indeed, "it is preferable for defendants to calculate the average hourly wage based on the average wage of all class members." *Coleman*, 730 F. Supp. 2d at 1150 (internal quotations omitted). Defendant does just that by averaging the hourly rates of putative class members during each pay period across the total number of paychecks. (Jackson Decl. ¶ 5.)

Plaintiff cites *Weston v. Helmerich & Payne Inter. Drilling Co.*, No. 1:13-CV-01092-LJO, 2013 WL 5274283, at *5 (E.D. Cal. Sept. 17, 2013), for the proposition that it is improper to use an average hourly wage in calculating the amount in controversy. In *Weston*, the court rejected a removing defendant's use of average figures in asserting an amount in controversy. *Id*. at *5. The court found "that using an average merely ensure[d] that the calculations [were] inaccurate for virtually every employee." *Id*. The Court agrees that using an average wage would be undesirable if the Court were attempting to discern the amount in controversy with respect to an individual employee. However, the task at hand is to determine the total amount in controversy for the claims of the entire putative class. For this purpose, it is hard to imagine a more useful metric than the putative class's average hourly wage. Indeed, many courts have used average hourly wages to determine the amount in controversy in wage-and-hour litigation. *See, e.g.*, *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-CV-00222-JSC, 2014 WL 2199645, at *7 (N.D. Cal. May 27, 2014) (using a putative class's average hourly wage to calculate the amount in controversy from the plaintiff's meal and rest period claims); *Leos*, 2014 WL 2586866 at *7 (approving the removing defendant's use of average hourly wages to determine the amount in controversy from the plaintiff's failure to compensate upon termination claim). Likewise, this Court finds the Defendant's use of the putative class's average hourly wage proper.

For the foregoing reasons, the Court **OVERRULES** Plaintiff's evidentiary objections.

### 2. Meal and Rest Periods

Defendant claims Plaintiff has put $5,411,967.60 in controversy in alleging meal and rest period violations.[2] (Opp'n at pp. 14, 15.) In order to reach that figure, Defendant assumes that each employee suffered one meal period and one rest period

---

[2] $2,705,983.80 from meal period violations and $2,705,983.80 from rest period violations. *See supra* Part III.B.

violation five days per week during each week of the relevant time period. (Opp'n at pp. 14, 15 nn. 1, 2.) In other words, Defendant assumes a "100% violation rate," meaning that employees were deprived of at least one rest period and one meal period every day they worked. (Opp'n at p. 16.) Plaintiff does not question Defendant's math, but rather argues that a 100% violation rate is unreasonable in this case. (Reply at p. 11.) The Court disagrees and finds it reasonable to assume a 100% violation rate based on Plaintiff's complaint.

When a complaint does not specify the frequency of labor violations, courts are divided about whether or not a removing defendant may assume a 100% violation rate in asserting an amount in controversy. Some courts have required a removing defendant to pinpoint specific evidence supporting an asserted violation rate. *See*, *e.g.*, *Marshall v. G2 Secure Staff, LLC*, No. 2:14-CV-04322-ODW, 2014 WL 3506608, at *2 (C.D. Cal. July 14, 2014) (rejecting the removing defendant's proposed violation rate when defendant provided no evidence and the plaintiff only alleged that the defendant "consistently" failed to provide meal and rest periods); *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) (rejecting the removing defendant's proposed violation rate because it was unsupported by evidence); *Weston*, 2013 WL 5274283, at *6 (same). Other courts have allowed a removing defendant to use a 100% violation rate when the plaintiff fails to specify the frequency of the alleged violations. *See*, *e.g*, *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007), (using a 100% violation rate where the plaintiff did not specifically allege the frequency of violations because the plaintiff was the master of her complaint and could have narrowed the scope of her allegations); *Coleman*, 730 F. Supp. 2d 1141, 1149 (assuming a 100% violation rate where the plaintiff did not provide a more precise calculation).

The Ninth Circuit provided some clarity on this issue with its recent decision in *Ibarra*. 775 F.3d 1193. There, the removing defendant assumed a 100% violation rate after the plaintiff's complaint alleged a "pattern and practice" of meal and rest period violations. *Id*. at 1198. The court determined that the plaintiff's allegation of a "pattern and practice" of labor violations did not equate to an allegation that the defendant always denied meal and rest periods. *Id*. at 1198-1199. Since "the complaint [did] not allege that [the defendant] universally, on each and every shift, violate[d] labor laws by not giving rest and meal breaks," the court remanded the issue to district court so that the parties could submit further evidence on the issue. *Id*. at 1199. While *Ibarra* did not explicitly hold that a court cannot assume a 100% violation rate, it indicates that the proper approach is to require the removing defendant to point to specific evidence or allegations in the plaintiff's complaint that support the use of a 100% violation rate. *See Yocupicio v. PAE Grp., LLC*, No. CV 14-8958-GW JEMX, 2014 WL 7405445, at *7 (C.D. Cal. Dec. 29, 2014), *appeal docketed*, No. 15-80004 (9th Cir. Jan. 8, 2015) (agreeing with the proposition that "federal courts may not assume a 100% violation rate unless that assumption is supported by the

specific allegations of the [c]omplaint or the defendant's evidence"). Under this approach, a 100% violation rate is proper when the plaintiff's complaint alleges that the defendant always engages in labor violations. *See Id.* (finding a 100% violation rate proper when the plaintiff's complaint alleged that putative class members did not receive meal or rest breaks "at all"); *Deaver*, 2014 WL 2199645, at *7 (finding a 100% violation rate proper where the plaintiff alleged "consistent and universal meal period violations").

Even following *Ibarra*, Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods. Plaintiff alleges that "at all material times," Defendant failed to provide putative class members with uninterrupted meal and rest periods as required by California law. (Compl. ¶ 37.) Taking Plaintiff's allegations as true, putative class members never received adequate meal and rest periods during the relevant time period. Thus, like in *Yocupicio*, Plaintiff's own complaint alleges universal violations of meal and rest period laws. This allows the Court to assume a 100% violation rate.

Plaintiff's citations to *Garibay*, *Marshall*, and *Weston* do not aid his argument that the Court cannot use Defendant's proposed 100% violation rate. In each of those cases, courts rejected the unsupported use of 100% violation rates. Here, on the other hand, Defendant supports its asserted violation rate with Plaintiff's own allegations. The Court must take Plaintiff's allegations as true. *Korn*, 536 F. Supp. 2d at 1205. If they are, Defendant always committed meal and rest period violations, making the use of a 100% violation rate appropriate for calculating the amount in controversy.

Since Defendant's use of a 100% violation rate is proper, the Court accepts Defendant's assertion that Plaintiff's meal and rest period claims place $5,411,967.60 in controversy.[3]

---

[3] The Court notes two additional issues not addressed by the parties. First, the one hour of compensation provided by California Labor Code § 226.7 is considered restitutionary, and therefore recoverable under the UCL. *See Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1112 (2007) (holding that the hour of compensation provided by § 226.7 constitutes payment of unpaid wages, rather than a penalty); *Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896 (C.D. Cal. 2005) ("An award under [§] 226.7 thus is restitutionary and may be recovered under the UCL.") Second, a California appellate court has interpreted § 226.7 as allowing one hour of recovery per day during which a meal violation occurs *as well as* one hour of recovery per day during which a rest violation occurs, even if those violations occur on the same day. *United Parcel Serv., Inc. v. Sup. Ct.*, 196 Cal. App. 4th 57, 70 (2011) (holding that § 226.7(c)'s mandate that "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided" allows an employee to recover a total of two hours of compensation when the employee is deprived of a meal period and a rest period on the same day).

### 3. Overtime and Minimum Wages

Defendant asserts that $1,623,590.28 is in controversy for Plaintiff's failure to pay overtime compensation claim and $229,790 is in controversy for Plaintiff's minimum wage claim. (Opp'n at pp. 17, 18.) In making these calculations, Defendant assumes putative class members worked two overtime hours each week without receiving overtime compensation. (Opp'n at p. 17 n.3.) Defendant also assumes putative class members worked at least one hour each week without receiving at least the minimum wage. (Opp'n at p. 18 n.4.) In calculating the amount in controversy for Plaintiff's overtime compensation claim, Defendant assumes putative class members were paid nothing for the two hours of overtime work. (Opp'n at p. 17 n.3.) If it is true that putative class members worked off the clock for those two overtime hours each week, they were necessarily deprived of minimum wage for those two hours. In essence, then, Defendant assumes each putative class member worked off the clock three hours each week, two of which were overtime hours.

Following the rubric set forth in *Ibarra*, a removing defendant must either point to specific allegations in the plaintiff's complaint or produce evidence supporting its asserted violation rate. *Ibarra*, 775 F.3d at 1199. Unlike in Plaintiff's meal and rest period claims, Plaintiff does not allege that Defendant always failed to pay overtime and minimum wage compensation. Instead, Plaintiff alleges that Defendant failed to pay putative class members "at least minimum wages for all hours worked" and "overtime wages . . . for all hours worked." (Compl. ¶¶ 36, 38.) The use of the word "all" in this context suggests that Defendant provided some, but not all minimum and overtime wages owed to the putative class. *See Adams v. Med. Staffing Network Healthcare, LLC*, No. 2:13-CV-00921-GEB-AC, 2013 WL 6388725, at *3 (E.D. Cal. Dec. 6, 2013) (interpreting the plaintiff's allegation that the defendant "fail[ed] to provide [the class] with all required meal and rest periods" to mean that the putative class was deprived of some, but not all, meal and rest periods). Thus, while Plaintiff's complaint indicates that putative class members worked off the clock at some point during the relevant period, it provides no indication of how often that conduct occurred.

Since the complaint provides no basis for Defendant's asserted violation rate, Defendant has the burden of providing evidence of the frequency of the alleged violations. *See Ibarra*, 775 F.3d at 1199 (remanding so that both parties could provide evidence of violation rates and noting that the burden of proof fell on the removing defendant). Defendant provides no evidence whatsoever regarding how often putative class members worked off the clock. The Court declines to adopt Defendant's entirely unsupported assumption that putative class members worked off the clock three hours per week. Because Defendant has already established that the amount in controversy exceeds $5,000,000, the Court need not quantify the amount Plaintiff's overtime and minimum wage claims place in controversy. The Court therefore does not include those claims in its

calculation.

### 4.     Plaintiff's Remaining Allegations

Defendant contends that Plaintiff's remaining allegations put the amount in controversy "even further over the [$5,000,000] threshold." (Opp'n at p. 21.) However, Defendant does not provide any evidence of the actual amount those claims place in controversy. (Opp'n at pp. 19, 20-21.) Indeed, Defendant does not consider those claims in setting forth its asserted amount in controversy. (Opp'n at pp. 20-21.) As it is Defendant's burden to provide evidence of the amount in controversy, the Court declines to consider Plaintiff's remaining claims in calculating the total amount in controversy.

### 5.     Attorneys' Fees

Defendant seeks to include attorneys' fees in the total amount in controversy. (Opp'n at p. 21.) Although Plaintiff's complaint seeks attorneys' fees, Plaintiff argues that prospective attorneys' fees are too speculative to be included in the amount in controversy at this time. (Reply at p. 14.) The Court disagrees with Plaintiff and includes prospective attorneys' fees in the amount in controversy.

Attorneys' fees may be included in calculating the amount in controversy for removal jurisdiction "where an underlying statute authorizes an award of attorneys' fees . . . ." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Plaintiff's complaint seeks attorneys' fees under California Code of Civil Procedure § 1021.5. (Compl. ¶ 60.) Section 1021.5 allows for awards of attorneys' fees in employment class actions. *See Perez v. Safety-Kleen Sys., Inc.*, 448 F. App'x 707, 708 (9th Cir. 2011) (affirming the district court's grant of attorneys' fees under § 1021.5 in a class action based on, *inter alia*, an employer's failure to provide meal and rest periods); *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 16-17 (2007) (finding attorneys' fees recoverable under § 1021.5 in a class action against an employer who failed to compensate employees for work-related expenses). Those fees may be included in determining the amount in controversy for CAFA jurisdiction. *See Yocupicio*, 2014 WL 7405445 at *6 (allowing attorneys' fees to be included in calculating the amount in controversy in an employment class action); *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600 at *13 (N.D. Cal. June 14, 2013) (including attorneys' fees in determining the amount in controversy for CAFA jurisdiction). As Defendant points out, the benchmark for attorneys' fees is 25% of the amount in controversy. *See Garibay*, 539 F. App'x at 764 (". . . [Removing defendant] correctly notes that 25% recovery is the 'benchmark' level for reasonable [attorneys'] fees in class action cases . . . and that such fees are properly included in calculations of the amount in controversy."); *Yocupicio*, 2014 WL 7405445 at *6 ("The Court would thus include a 25% fee award in its amount-in-controversy calculation."). Since Defendant has established by the preponderance of the evidence an amount in controversy of at least $5,411,967.60, the Court includes $1,352,991.90 of

attorneys' fees in the total amount in controversy.

### 6. Total Amount in Controversy

Based on Plaintiff's complaint and the evidence provided by Defendant, the Court calculates an amount in controversy of $5,411,967.60 for Plaintiff's meal and rest period claims and $1,352,991.90 for prospective attorneys' fees. Adding these numbers together, the Court calculates a total of $6,764,959.50 in controversy. Since the amount in controversy exceeds CAFA's $5,000,000 jurisdictional prerequisite, the Court concludes that it possesses jurisdiction over Plaintiff's claims.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand. (Dkt. No. 15.)

**IT IS SO ORDERED.**